Filed 2/22/24  P. v. Alvarez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B328776 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA147394-01) |
| v. | |
| RAMIRO G. ALVAREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  John J. Lonergan, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Defendant Ramiro Alvarez[1] appeals from his judgment of conviction for count 1, oral copulation or sexual penetration with a child 10 years old or younger.  (Pen. Code,[2] § 288.7, subd. (b).)  The trial court sentenced Alvarez to 15 years to life.  The court credited Alvarez with 1,519 days actual custody credit and 228 days local conduct credit for a total of 1,747 days of presentence custody credit.

Alvarez appealed, and his appellate counsel filed a brief asking this court to proceed under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  We affirm.

Jaqueline C. testified that she lived in a home with several family members including her father, father's wife, brother, niece, and nephew.  Guillermo, Sr., Jaqueline's father, owned the home.  Alvarez resided in the home and lived in a bedroom in the house.

Guillermo, Jr., (Guillermo Jr.) testified that he lived in the home with his children, Sebastian C. and Darlene C.  As of March 2018, Darlene was a one-year-old child, nearing two, and her brother was 11 months older than Darlene.  On the night of March 3, 2018, Guillermo Jr. was in the home with his two children.  Guillermo Jr. slept in the living room with his children on a pull-out couch.  On at least one previous night, Darlene fell off the bed when they slept on the pull-out couch.  On the night of March 3, 2018, Guillermo Jr. was positioned between the two children as they all fell asleep.  During the night, Guillermo Jr.

---

[1]     We refer to the defendant by his last name, defendant's relatives by their full names, and Darlene C.'s relatives by their first names.

[2]     All statutory references are to the Penal Code.

heard diapers being undone, and he saw Alvarez. He saw Alvarez put his mouth on Darlene's vagina. Guillermo Jr. questioned Alvarez and kicked Alvarez out of the home. Then, someone in the home called the police.

Thereafter, the police arrived at the home. Guillermo Jr. and Darlene's mother took Darlene to a children's hospital where testing was done. Guillermo Jr. told police that he saw Alvarez pull Darlene's pants down before putting his mouth on her vagina, and in trial he admitted that he did not see Alvarez pull her pants down.

Carolyn Clark testified that she is a forensic nurse who performs sexual assault exams and domestic violence exams. Clark used nasal swabs to collect reference samples, and took samples from Darlene's breasts, belly button, anus, and around the outside of her mouth. Clark took genital swabs in three different areas: the mons pubis, the vulva, and the vestibule.

A senior criminologist for the Los Angeles County Sheriff's Department Scientific Services Bureau (Bureau), Cynthia Tse, testified that she tested the samples for biological fluids. When testing the mons pubis sample, Tse found evidence of saliva because there was alpha-amylase on the sample. Although feces also has amylase, Tse concluded that the sample was inconsistent with feces because there was no staining on it. Tse also tested samples for the vulva and vestibule, which were negative for saliva.

Ilene Louie testified as a senior criminalist assigned to the forensic biology section of the Bureau. Louie reviewed the work for the analyst who performed the DNA tests. The Bureau performed DNA tests on samples from the mons pubis, vulva, and vestibule, using the nasal sample as a reference. The DNA test

from the mons pubis returned a result consistent with two contributors, Darlene and Alvarez. According to the test results, Darlene was aligned best with a 62 percent contributor, and Alvarez was best aligned with a 38 percent contributor. The lab conducted a statistical analysis comparing the possibility that the DNA was obtained from Darlene and Alvarez versus the possibility that the DNA was obtained from Darlene and an unknown individual. The DNA profile was $1.2$ times $10$ to the 26th power more likely that it originated from Alvarez and Darlene than if it came from an unknown individual and Darlene. The Bureau found no male DNA on the vulva or vestibule samples.

Julian Alvarez, defendant Alvarez's older brother, testified that Alvarez did not have a reputation for having inappropriate relationships with small children and that Alvarez was considered an honest person at work.

Francisca Muro Vazquez, Alvarez's girlfriend, observed Alvarez around her one-year-old son and never saw Alvarez behave inappropriately toward her son or any other children. Muro Vazquez also said that Alvarez is an honest person.

Alvarez testified that he lived at Guillermo, Sr.'s home for four years. On March 3, 2018, he got home between 10:30 p.m. and 11:00 p.m. When he came inside the house, he went into his room before entering the bathroom. When he went back to his room, he saw a child on the floor. Alvarez picked up the child and put the child into bed. At that point, Guillermo Jr. woke up and said something to Alvarez. Prior to that moment, Alvarez did not know which child he picked up, but realized that he picked up Darlene when Guillermo Jr. told him to let his daughter go. Guillermo Jr. told Alvarez to go to his room, and Alvarez told

4

Guillermo Jr. to be careful with Darlene because that was not the first time Guillermo Jr. dropped her. Alvarez went to his room and did not understand what was happening. Alvarez went to sleep in his room until the family knocked on his door three hours later. The family verbally attacked him and asked him why he did it. Alvarez was confused and saw a police officer coming towards him. Once he was taken to a police car, Alvarez learned of the accusation against him.

Forensic scientist Marc Taylor testified as the director of Technical Associates, a DNA laboratory. The DNA sample from the mons pubis had male DNA in a very small amount, about .3 nanograms. The testing for amylase indicated that saliva may be present, but does not indicate whose saliva is present. Fecal matter also has amylase, and it could be that fecal matter was present. The DNA on the mons pubis could have resulted from oral copulation or from picking up a toddler and placing her on a bed. The DNA could have come from any number of sources such as from people's fingers after rubbing their eyes or mouth.

We examined the record and are satisfied Alvarez's appellate attorney has fully complied with the responsibilities of counsel and no arguable issues exist. (*People v. Kelly* (2006) 40 Cal.4th 106, 119; *Wende, supra*, 25 Cal.3d at p. 441.)

## DISPOSITION

The judgment is affirmed.

VIRAMONTES, J.

WE CONCUR:

GRIMES, Acting P. J.

WILEY, J.

6